OPINION
PER CURIAM.
Petitioner Nano Sukarno entered the United States as a nonimmigrant visitor on August 9, 2000. On May 12, 2003, the Immigration and Naturalization Service served Sukarno, a native and citizen of Indonesia, with a notice to appear charging him as removable for remaining in the country for a time longer than his visa permitted. Sukarno conceded removability as charged, but applied for asylum, withholding of removal, and relief under the Convention Against Torture (“CAT”), on the ground that he had suffered past persecution and feared future persecution due to his political activities in Indonesia. Specifically, Sukarno asserted that he was persecuted because of his membership in the Golkar Party (GP) in Muncar, Indonesia.
The IJ found that Sukarno failed to corroborate his claim that he was a member of, or held a leadership position in, the GP and thus his testimony did not establish past persecution. The IJ also held that Sukarno failed to submit any evidence that a member or leader of the GP would be targeted for future persecution. In making that finding, the IJ cited to an electronic encyclopedia (Wikipedia) article the Department of Homeland Security submitted stating that the GP is active and has won more than 20 percent of the vote in recent legislative elections. (A.R.52.) The IJ denied all petitions for relief, determining that the asylum application was untimely. Sukarno appealed to the Board of Immigration Appeals (“BIA”). The BIA affirmed the IJ’s decision and dismissed Sukarno’s appeal. Sukarno filed a timely petition for review of the BIA’s decision.
We have jurisdiction under 8 U.S.C. § 1252. We uphold the BIA’s determinations if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole. Yusupov v. Att’y Gen., 518 F.3d 185, 197 (3d Cir.2008). Under the substantial evidence standard, the BIA’s determinations “must be upheld unless the evidence not only supports a contrary conclusion, but compels it.” Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir.2001) (citing INS v. Elias-Zacarias, 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)).
*799 In his petition, Sukarno challenges only the BIA’s determination on his withholding of removal claim.[1] To be eligible for withholding of removal, Sukarno must demonstrate that “there is a greater-than-fifty-percent chance of persecution” in Indonesia based on one of the protected grounds. Senathirajah v. INS, 157 F.3d 210, 215 (3d Cir.1998); see also 8 U.S.C. § 1231(b)(3)(C).
Sukarno challenges the IJ’s reliance on an article from an electronic encyclopedia, arguing that it is an unreliable source for factual information about the GP. We agree with the Government that this claim is waived for Sukarno’s failure to raise it before the BIA.[2] See 8 U.S.C. § 1252(d)(1); Zheng v. Gonzales, 422 F.3d 98, 107-08 (3d Cir.2005) (failure to exhaust claims before the BIA bars consideration of those claims before the court of appeals). Even if we were to consider this claim, we would find it meritless. The IJ denied Sukarno’s claim based on his failure to present evidence that he would be singled out for persecution due to his GP activities and not based on the statistics in the encyclopedia article. (A.R.52-53.)
Further, the IJ and BIA’s finding with regard to past persecution is supported by substantial evidence. The IJ held that Sukarno failed to provide any corroborating evidence that he was a member of the GP. The BIA’s rule regarding coiToborating evidence contemplates a three-part inquiry: “1) identification of the facts for which ‘it is reasonable to expect corroboration;’ 2) an inquiry as to whether the applicant has provided information corroborating the relevant facts; and, if [he] has not, 3) an analysis of whether the applicant has adequately explained [his] failure to do so.” Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir.2001) (citation omitted). Here, since Sukarno based his entire withholding of removal claim on his membership in the GP, it would have been reasonable for him to provide corroboration of his involvement with the party. When asked why he failed to provide supporting documents, Sukarno responded that he did not bring the documents with him. (A.R.102.) The IJ did not find this explanation reasonable given Sukarno’s “leadership position [in the GP], especially in the context of his educational and occupational accomplishments in Indonesia.” (Id. at 51.) Sukarno has made no argument that would cause us to question the IJ’s conclusion.
Moreover, the only incident of harm Sukarno testified to, aside from anonymous threatening letters, was a night-time attack by assailants dressed in ninja outfits on his home while he was out of town. (Id. at 94.) While Sukarno’s wife and child were home at the time of the attack, he did not indicate that the assailants harmed them. (Id.) This account does not compel a conclusion that Sukarno experienced past persecution. See Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir.2005)(defining persecution as “threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom.”) Finally, as the Government correctly points out, Sukarno’s fear of future persecution is further undermined by the fact that his family remains in Indonesia unharmed. Id. at 537.
*800 For these reasons we will deny Sukarno’s petition for review.

. In the initial petition for review, Sukarno indicated that he wished to challenge the IJ's denials of his asylum claim and relief under the CAT. Sukarno's failure to raise these issues in his appellate brief, however, constitutes a waiver of the issues on appeal. See United States v. Pelullo, 399 F.3d 197, 222 (3d Cir.2005).

. Indeed, we note that Sukarno relied on information from the article in his appeal before the BIA. (A.R.23.)